**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **JONATHAN JONES** | :  **CIVIL ACTION** |
| | : |
| | : |
| **v.** | : |
| | :  **NO.  14-4689** |
| | : |
| **AMERIHEALTH CARITAS, et al.** | : |

**MEMORANDUM**

**KEARNEY, J.**                                                                **MARCH 6, 2015**

In this employment race and sex discrimination, harassment and retaliation case, the employer and supervisor defendants raise a wide variety of exhaustion and merits arguments seeking to dismiss some or all of the claims in the employee's First Amended Complaint ("FAC"). Several issues on informal complaints as the basis for a retaliation claim and the availability of punitive or "pain and suffering" damages under plead claims have not yet been addressed by our Court of Appeals.   At this motion to dismiss preliminary stage, and following the weight of persuasive authority, we find that Plaintiff's claims for race and sex discrimination, harassment and retaliation are sufficiently plead so as to allow the parties to proceed into discovery and we deny the Defendants' motion to dismiss in its entirety.

**I.      Allegations of First Amended Complaint.**

In May 2011, Amerihealth Caritas ("Amerihealth") hired Jonathan Jones ("Jones"), an African-American male, as a Claims Examiner. (ECF Doc. No. 6, Compl., ¶ 19.)  He became one of Amerihealth's most consistent Claims Examiners.  (*Id.* ¶ 21.)  Jones claims that his supervisor Kathleen Gray ("Gray") treated Jones differently than other employees because he

was a male. (*Id.* ¶ 23.)  As alleged, Defendant Gray subjected Jones to disciplinary measures that other employees were not subject to and denied Jones' promotion applications. (*Id.* ¶ 24.)

Jones complained about Gray's treatment in June 2012, as well as other discrimination he allegedly faced. (*Id.* ¶ 26.)  After making those complaints, Amerihealth repeatedly passed over Jones for promotions that went to less qualified female, Caucasian counterparts. (*Id.* ¶¶ 27-28.) Amerihealth then transferred Jones away from Gray's supervision in October 2013. (*Id.* ¶ 29.)

Jones also complained of being paid less than white female counterparts. (*Id.* ¶¶ 35-36.) In Summer 2012, Jones complained internally to Human Resources employee Michael Greevy regarding the disparity in pay. (*Id.* ¶ 36.)  Jones claims that, after these complaints, Amerihealth continued passing him over for promotions. (*Id.* ¶ 37.)

On June 28, 2013, Jones cross-filed an administrative charge (the "First Charge") with the Equal Employment Opportunity Commission (EEOC) and the Pennsylvania Human Relations Commission (PHRC).     After obtaining counsel, Jones cross-filed a second administrative charge (the "Second Charge") with the EEOC and PHRC on November 3, 2013. Jones then filed an amended charge (the "Amended Charge") on November 18, 2013.  On May 19, 2014, the EEOC issued a right-to-sue letter on the First Charge filed by Jones.[1]

Jones now brings suit against Amerihealth and his supervisor Gray alleging unlawful employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq*, and the Pennsylvania Human Relations Act ("PHRA") 43 Pa.C.S. § 955, *et seq*, as well as unlawful employment practices in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("§ 1981"), the Equal Pay Act, 29 U.S.C. § 206(d) (the "EPA"), and the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3) (the "FLSA"). Defendants moved to

---

[1]     Jones has not received a right-to-sue letter on the Second or Amended Charges and does not purport to bring claims dependent on those charges.

2

dismiss the FAC in its entirety arguing that Jones failed to administratively exhaust his claims for race and sex discrimination, as well as retaliation under Title VII. Further, Defendants assert that the FAC fails to state a claim upon which relief can be granted under § 1981, the EPA, and the FLSA.

## II.   Standard of review.

A plaintiff must plead "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2). Any "pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " *Fowler v. UPMC Shadyside,* 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

The complaint need not contain "detailed factual allegations" but rather " 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.' " *Warren Gen. Hosp.,* 643 F.3d at 84 (quoting *Fowler,* 578 F.3d at 210). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 556). We will dismiss a complaint if the factual allegations in the complaint are not sufficient " 'to raise a right to relief above the speculative level.' " *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank,* 712 F.3d 165, 169 (3d Cir.2013) (quoting *Twombly,* 550 U.S. at 555).

## III.   Analysis

### A.   Jones' alleged failure to exhaust administrative remedies.

3

Defendants allege that Jones failed to administratively exhaust his claims for race and sex discrimination, harassment, and retaliation under Title VII and the PHRA. With regard to the race and sex harassment, Defendants claim that since neither the First nor Second Charge refers to harassment based on race or sex, Jones failed to administratively exhaust. Defendants further argue that since Jones failed to attach his May 19, 2014 Right-to-Sue letter, he has not demonstrated that he exhausted his administrative remedies with regard to any claims based on the First Charge. Defendants further argue that because Jones did not specifically allege that he waited one year to file his PHRA claims, he has failed to show that he exhausted his administrative remedies under the PHRA.

The filing of an administrative charge with the PHRC and EEOC is a prerequisite for filing suit alleging workplace discrimination. *See Antol v. Perry*, 82 F.3d 1291, 1295-96 (3d Cir. 1996) (dismissing Title VII gender discrimination claim where plaintiff failed to exhaust administrative remedies); *Richards v. Foulke Assoc., Inc.*, 151 F. Supp.2d 610, 613-16 (E.D. Pa. 2001) (finding plaintiff filing claims under PHRA must exhaust administrative remedies). This Court must determine "whether the acts alleged in the subsequent Title VII suit are fairly within the scope of the prior EEOC complaint, or the investigation arising therefrom." *Waiters v. Parsons*, 729 F.2d 233, 237 (3d Cir. 1984). "The scope of the original charge should be liberally construed because charges are 'most often drafted by one who is not well versed in the art of legal description.' " *Weems v. Kehe Food Distribs., Inc.*, 804 F. Supp. 2d 339, 342 (E.D. Pa. 2011) (quoting *Hicks v. ABT Assocs., Inc.*, 572 F.2d 960, 965 (3d Cir. 1978)).

Initially, we find that Jones' claims of race and sex harassment, as well as retaliation in connection with the disparity in wages, are fairly within the scope of his First EEOC complaint.

4

In his First Charge, Jones checked the "Discrimination Based On" boxes for race, sex, and

retaliation. Jones' narrative describing the alleged discrimination is as follows:

> I was hired in May of 2011, and employed as a Claims Examiner. In June
> of 2012, I made an internal complaint to human resources about sex
> discrimination.
> In July of 2012, I was denied a promotion. On June 28, 2013, I was
> screamed and yelled at by Marcia Scott, Claims Examiner (White
> Female). If I did the same to a female employee, I would have been
> discharged.
> I allege that I have been discriminated against because of my race (Black)
> and sex (male), and retaliated against for having complained of
> discrimination, in violation of Title VII of the Civil Rights Act of 1964, as
> amended.

(ECF Doc No. 8, Defs.' Mot., Ex. 2.) The court in *Weems* found that the plaintiff had exhausted

his claims of harassment and hostile work environment.[2]   804 F. Supp. 2d at 341.   The

administrative charge in *Weems* was more sparse than Jones' First Charge.[3]   The court found

that the plaintiff's allegations of discrimination were enough to have exhausted his

administrative remedies with regard to his harassment and hostile work environment claims.

Here, Jones alleges that he was subject to race and sex discrimination and Amerihealth

then retaliated against him for making complaints regarding sex discrimination. As in *Weems*,

Jones alleges that he was subject to race and sex discrimination over a period of time rather than

an "isolated incident of hostility." *Weems*, 804 F. Supp. 2d at 341. Further, Jones specifically

---

[2]   Defendants cite *Weems* to show that courts in this District have dismissed claims that
were not within the reasonable scope of the EEOC charge. (ECF Doc. No. 8, Defs.' Mem., 11.)
This is a true statement and *Weems* does in fact note these cases. 804 F. Supp. 2d at 342
("Numerous courts in this district have dismissed claims that were not within the reasonable
scope of the EEOC charge."). However, the court in *Weems* ultimately distinguishes these cases
and ends up in a position that ultimately controverts Defendants' here.

[3]   The administrative charge in *Weems* consisted of one line: "During my employment, 1
[sic] was disciplined for infractions that my similarly situated non-Black co-workers were not
disciplined for." 804 F. Supp. 2d at 342.

alleges in his First Charge that he made a complaint about Defendants' discriminatory practices and Amerihealth retaliated against him. Jones' First Charge presents enough factual allegations such that the harassment and retaliation claims "can reasonably be expected to grow out of the charge of discrimination" such that Jones administratively exhausted these claims. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir. 1976).

Defendants next argue that Jones failed to attach his EEOC Right-to-Sue letter to the FAC. This is of no moment. We note that "there is no requirement that a right to sue letter be attached to a complaint . . . ." *Sample v. Keystone Mercy Health Plan*, Civ. A. No. 12-3188, 2012 WL 5401015, at *2 (E.D. Pa. Nov. 5, 2012) (citing *Butler v. BTC Foods Inc.*, Civ. A. No. 12-492, 2012 WL 5315034, at *4 (E.D. Pa. Oct. 19, 2012)). Further, the pleading of conditions precedent, such as administrative exhaustion, is governed by Federal Rule of Civil Procedure 9(c).[4] *Hildebrand v. Allegheny Cnty.*, 757 F.3d 99, 112 (3d Cir. 2014) ("The pleading of conditions precedent is governed by Rule 9(c), not Rule 8(a).") We find that Jones not attaching a right-to-sue letter and not specifically pleading administrative exhaustion are not fatal. Jones is also not required to attach PHRC documents regarding his administrative exhaustion. *See Sample*, 2012 WL 5401015, at *2 (noting that "plaintiff was not required to attach her PHRC charge to her amended complaint").

Defendants' arguments that Jones did not wait one year to bring his claims under the PHRA are also unavailing. Jones' Second Charge and Amended Charge were filed on November 3, 2013 and November 18, 2013, respectively. The PHRC has exclusive jurisdiction for one year. But, after the one year, a plaintiff may bring a claim regardless of whether it has received notice of a right to sue. *See Wardlaw v. City of Philadelphia*, Civ. No. 09-3981, 2011

---

[4]     Federal Rule of Civil Procedure 9(c) states: "In pleading conditions precedent, it suffices to allege generally that all conditions precedent have occurred or been performed."

WL 1044936, at *3 (E.D. Pa. Mar. 21, 2011). Also true that the filing of an amended complaint can cure exhaustion defects with regard to PHRA claims. *See Pergine v. Penmark Mgmt. Co.*, 314 F. Supp. 2d 486, 490 (E.D. Pa. 2004) ("Thus, to the extent that plaintiff's PHRA claims were unexhausted at the time of the filing of the original complaint, they were clearly exhausted at the time the amended complaint was filed . . . .") (citing *Price v. Philadelphia Elec. Co.*, 790 F. Supp. 97, 99 (E.D. Pa. 1992)). Jones filed the FAC on November 26, 2014, more than one year after filing his Second and Amended Charge. Jones' PHRA claims, including those in the Second Charge and Amended Charge, are properly included in Count III of the FAC.

## B.  Jones' alleged failure to state a claim under Section 1981.

Section 1981 provides that [a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981. Under § 1981, a plaintiff must allege "facts in support of the following elements: (1) [that plaintiff] is a member of a racial minority; (2) intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in the statute[,] which includes the right to make and enforce contracts." *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 797 (3d Cir. 2001) (citation omitted) (alteration in original).

Defendants argue that Jones failed to identify an existing contract that he attempting to enforce.[5]  Defendants also argue that Jones fails to allege discrimination concerning the enforcement of an existing contract. Jones responds that an at-will employee has the required contractual relationship to sustain a claim under § 1981.

---

[5]  Defendants also note that Count II of the FAC contains language regarding sex discrimination and that sex discrimination is not covered by § 1981. Section 1981 applies only to racial discrimination and does not encompass sex discrimination. *See Anjelino v. New York Times Co.*, 200 F.3d 73, 97-98 (3d Cir. 1999) (affirming dismissal of § 1981 sex discrimination claim as it is not "cognizable under the statute"). To the extent Jones is making a sex discrimination claim pursuant to § 1981, it is barred.

7

Courts in this Circuit have found that an at-will employee has a contractual relationship with the employer so as to satisfy the third element under § 1981. *See McClease* 226 F. Supp. 2d at 702; *Rouse v. II-VI, Inc.*, 2007 WL 1007925 (W.D. Pa. Mar. 30, 2007) (finding at-will employee can sustain a §1981 claim at this stage).[6] Defendants do not challenge these cases. We see no reason to distinguish these holdings at this early stage of the litigation.

With the requisite contractual relationship, the issue is now whether Jones failed to allege discrimination concerning the enforcement of such a contract. The statute defines the term "make and enforce contracts" as including "the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 29 U.S.C. § 1981(b). Jones alleges that he was denied such enjoyment due to racially discriminatory employment practices. He was passed over for promotions, paid an amount less than members of the opposite sex for the same work, disciplined disproportionately, and retaliated against for complaining of such conduct all interfering with the benefits, privileges, terms and conditions of his employment. (ECF Doc. No. 6, Compl., ¶¶  We find Jones has alleged sufficient facts to sustain a claim under § 1981.

## C.     Failure to state an EPA claim.

To state an EPA claim, a plaintiff must plead that "employees of the opposite sex were paid differently for performing equal work—work of substantially equal skill, effort and responsibility, under similar working conditions." *Stanziale v. Jargowsky*, 200 F.3d 101, 107 (3d Cir. 2000). Jones names three women that he claims were paid more than him for doing similar work as a Claims Examiner. (ECF Doc. No. 6, Compl, ¶ 35.) It further alleges that these three

---

6       Other Courts of Appeals have found that at-will employment is sufficient to sustain a § 1981 claim for racially discriminatory employment practices. *See, e.g., Walker v. Abbott Labs.*, 340 F.3d 471 (7th Cir. 2003); *Skinner v. Maritz, Inc.*, 253 F.3d 337 (8th Cir. 2001); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419 (5th Cir. 2000); *Lauture v. Int'l Bus. Mach. Corp.*, 216 F.3d 258 (2d Cir. 2000); *Spriggs v. Diamond Auto Glass*, 165 F.3d 1015 (4th Cir. 1999).

women were less qualified for the position with the same or less level of seniority. (*Id.*) We find that Jones has alleged sufficient facts to support a *prima facie* case under the EPA.[7]  Discovery may lead to a different result, but at this early stage in litigation we construe the facts in Jones' favor.

### D.       Failure to state an FLSA claim.

Defendants argue that Jones' FLSA claim fails for not specifically alleging facts concerning his complaints about unequal pay, including the dates of his complaints or to whom the complaints were made. Defendants further argue that informal complaints to an employer do not constitute protected activity under the FLSA.

To state a prima facie case of retaliatory discrimination under the FLSA, a plaintiff must plead that "(1) the plaintiff engaged in protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal link between the plaintiff's protected action and employer's adverse action." *Scholly v. JMK Plastering, Inc.*, Civ. A. No. 07-4998, 2008 WL 2579729, at *3 (E.D. Pa. June 25, 2008) (citations omitted).   An employee engages in protected activity when an employee has "filed any complaint or instituted or caused to be instituted any proceeding under or related to [the FLSA]." 29 U.S.C. § 215(a)(3).

Our Court of Appeals has not directly decided whether informal complaints to employers are protected activity. *Scholly*, 2008 WL 2579729, at *3. However, many courts of appeals have found internal complaints qualify as protected activity. *See, e.g., Lambert v. Ackerley*, 180 F.3d 997 (9th Cir. 1999) (finding internal complaints to employer protected activity under the statute); *Valerio v. Putnam Assocs., Inc.*, 173 F.3d 35 (1st Cir. 1999); *EEOC v. Romero*, 976 F.2d 985

---

[7]       We decline Defendants' invitation to impose a heightened pleading standard on Plaintiff and employ the "factor by factor" comparison from *Strag v. Board of Trustees, Craven Cmty. College*, 55 F.3d 943, 948 (4th Cir. 1995). *Strag* is from outside this Circuit. At this early stage, plaintiff must only plead a *prima facie* case with sufficient factual allegations.

9

96th Cir. 1992); *EEOC v. White & Sons Enters.*, 881 F.2d 1006 (11th Cir. 1989); *Love v. Re/Max of Am., Inc.*, 738 F.2d 383 (10th Cir. 1984); *Brennan v. Maxey's Yamaha, Inc.*, 513 F.2d 179 (8th Cir. 1975).   Further. District courts in this Circuit have found informal complaints to an employer sufficient.  *Scholly*, 2008 WL 2579729, at *3; *Barnello v. AGC Chemicals America, Inc.*, Civ. A. No. 08-3505, 2009 WL 234142, at *5 (D.N.J. Jan. 29, 2009).  In doing so, these courts interpret § 215(a)(3) liberally due to the FLSA's remedial nature.  *See Valerio*, 173 F.3d at 42 ("The FLSA has been treated as remedial in purpose.")  Our Court of Appeals has instructed this Court to look "to [the FLSA's] animating spirit in applying it to activities that might not have been explicitly covered by the language." *Brock v. Richardson*, 812 F.2d 121, 124 (3d Cir. 1987); *see also Scholly*, 2008 WL 2579729, at *3.   Accordingly, we find that sufficiently pleading an informal complaint to an employer may qualify as protected activity under § 215(a)(3).

Jones specifically alleges that he made internal complaints to Amerihealth's Human Resources employee Michael Greevy in Summer 2012, regarding the alleged pay disparity. (ECF Doc. No. 6, Compl, ¶ 36.)  He further alleges that because of this internal complaint, Amerihealth subjected him further discrimination, including passing over him for promotions. (*Id.* ¶ 37.)  Further, in response to Jones' complaints regarding wages, Amerihealth continually placed Jones in different lines of business which caused his evaluation numbers to be "artificially lower."  (*Id.*) At this stage in the proceedings, accepting the allegations as true, we find Jones has stated a claim for retaliatory conduct in violation of the FLSA.[8]

---

[8]    Defendants note Jones' First Charge was not served on Defendants until May 6, 2014. (ECF Doc. No. 9-1, Defs.' Mem., 16.)  The plaintiff is not tasked with performing the EEOC's duties such as serving the charge. *See McClease v. R.R. Donnelley & Sons Co.*, 226 F. Supp. 2d 695, 704 (E.D. Pa. 2002) (citation omitted).

### E.    Right to jury trial on PHRA claims.

Defendants argue that Jones is not entitled to a jury trial on his PHRA claims, citing the Pennsylvania Supreme Court decision in *Wertz v. Chapman Twp.*, 741 A.2d 1272 (1999). Defendants assert that "it is well settled that the PHRA does not provide for jury trials." (Defs.' Mot., 17.)

We, along with the Court of Appeals and numerous district courts within this Circuit, reject Defendants' argument. In *Marra v. Philadelphia Housing Auth.*, the Court of Appeals held that it was not bound by the *Wertz* decision because "[t]he right to a jury trial in federal court, regardless of whether the claim arises under state law, presents a question of federal law." 497 F.3d 286, 313 (citing *In Re City of Philadelphia Litigation*, 158 F.3d 723, 726 (3d Cir. 1998) (citations omitted)). "Although the *Marra* Court did not decide the issue of whether federal law afforded the right to a jury trial on a PHRA retaliation claim, it cited 'scores of district courts in this Circuit [that] have concluded that the Seventh Amendment confers a right to a jury trial on PHRA claims brought in federal court, at least where compensatory relief is sought." *Sample v. Keystone Mercy Health Plan*, Civ. A. No. 12-3188, 2012 WL 5401015, at * 4 (E.D. Pa. Nov. 5, 2012).

We are bound by the Court of Appeals' holding in *Marra* and agree with the numerous district courts deciding that the Seventh Amendment confers a right to a jury trial on PHRA claims seeking compensatory damages brought in federal court. *See Id.; Cnty. of McKean*, No. 11-254, 2012 WL 1564661, at *7 (W.D. Pa. Apr. 9, 2012) ("[T]he Court finds that Plaintiff has a right to a jury trial on her PHRA retaliation claim."); *Heater v. Kispeace*, No. Civ. A. 05-4545, 2005 WL 2456008, at *5-6 (E.D. Pa. Oct. 5, 2005) ("Plaintiff is entitled to a jury trial on her PHRA claim for compensatory damages."); *Cortes v. R.I. Enterps., Inc.*, 95 F. Supp. 2d 255,

260-62 (M.D. Pa. 2000) (holding plaintiff established entitlement to jury trial of legal claims brought under the PHRA).

### F. Compensatory and Punitive Damages pursuant to the EPA and the FLSA.

#### *i.     Punitive Damages*

Defendants argue that punitive damages are not available under the EPA and FLSA. Defendants argue that an award of damages under the EPA is limited to those damages specifically provided for by Congress in its statutory provisions. As a result, Jones may recover "back pay and an additional equal amount as liquidated damages" but not punitive damages. (ECF Doc. No. 8, Defs.' Mem., 19.)

First, we note that "[t]he EPA exists within the [FLSA]." *Marburger v. Upper Hanover Twp.*, 225 F. Supp. 2d 503, 507 (E.D. Pa. 2002). Accordingly, the damages provision at 29 U.S.C. § 216(b) applies with equal force to both claims under the EPA and the FLSA. We will analyze Defendants' arguments against punitive damages under the EPA and FLSA together.

In 1977, Congress amended the FLSA to include the second sentence of § 216(b). Pub.L. 95-151, 91 Stat. 1252 (1977). The second sentence of § 216(b) provides that, "Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). This provision applies where the plaintiff complains of retaliatory conduct violative of §215(a)(3).[9]

---

[9]     Section 215(a)(3) provides:

(a) After the expiration of one hundred and twenty days from June 25, 1938, it shall be unlawful for any person—

Our Court of Appeals has not addressed this issue. Only two courts of appeals have definitively answered whether punitive damages are available under the FLSA. They reached contrary results. *See Travis v. Gary Comty. Mental Health Ctr., Inc.*, 921 F.2d 108 (7th Cir. 1990) (finding punitive damages are available for a retaliation claim under the FLSA); *but see Snapp v. Unlimited Concepts, Inc.*, 208 F.3d 928 (11th Cir. 2000) (finding punitive damages are not available for a retaliation claim under the FLSA). One court in this District found that punitive damages are available for a retaliation claim under the FLSA. *See Marrow v. Allstate Sec. & Investigative Servs., Inc.*, 167 F. Supp. 2d 838 (E.D. Pa. 2001) (holding punitive damages available for retaliatory claim under FLSA).

In *Travis*, the Court of Appeals for the Seventh Circuit held that § 216(b) allowed the imposition of punitive damages against an employer who engaged in retaliatory conduct towards its employee in violation of § 215(a)(3). 921 F.2d at 111-12. The Court focused on the change in §216(b) following the 1977 amendment. *Id.* at 211. The new language is much broader as it allows "legal" relief "without limitation." *Id.* at 112 ("Congress could limit these damages, but the 1977 amendment does away with the old limitations without establishing new ones."). "This amendment authorizes 'legal' relief, a term commonly understood to include compensatory damages." *Id.* at 111. Noting that Congress provided no guidance as to what was appropriate "legal" relief and after finding that "legal" relief is understood to include punitive damages, the

---

(3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee;

29 U.S.C. § 215(a)(3).

court held that "punitive damages are appropriate for intentional torts such as retaliatory discharge." *Id.* at 111-12.

The Court of Appeals for the Eleventh Circuit in *Snapp* disagreed with the reasoning of the Seventh Circuit holding that punitive damages were not contemplated by Congress when it amended §216(b) and were therefore not available to a plaintiff. 167 F. Supp. 2d at 933-39. In doing so, the Court "look[ed] for clues within the statute" to help it understand what "legal relief" Congress intended. *Id.* at 934. The Eleventh Circuit found that all the forms of relief listed in § 216(b) were meant to "*compensate* the plaintiff." *Id.* (emphasis in original). Given that "it is clear that all of the relief provided in section 216(b) is compensatory in nature" the Eleventh Circuit found that "punitive damages would be out of place in a statutory provision aimed at making the plaintiff whole." *Id.*

The court of appeals in *Snapp* then examined § 216(a) which provides for criminal penalties for willful violations of § 215.[10]  "In contrast to the make-whole provisions of section 216(b), Congress provided for punitive sanctions in section 216(a) . . . ." *Id.* at 935. These two sections, along with other substantive provisions, evidenced Congress' intent to put in place a "comprehensive remedial scheme" that included "punitive sanctions, compensatory relief, private rights of action, and actions brought by the Secretary of Labor." *Id.* Thus, § 216(b) cannot be read to include punitive damages. *Id.* Further, the Eleventh Circuit noted that, if

---

[10]     Section 216(a) provides:

> Any person who willfully violates any of the provisions of section 215 of this title shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both. No person shall be imprisoned under this subsection except for an offense committed after the conviction of such person for a prior offense under this subsection.

29 U.S.C. § 216(a).

14

punitive damages are allowed under § 216(b), then they should be awarded in every case as a matter of course because retaliatory discharge is "inherently willful." *Id.* at 936. This was not Congress' intention, but rather under § 216(a), Congress intended the "Executive to make a determination concerning which cases of intentional retaliation are so egregious that they warrant the imposition of an additional punitive deterrent." *Id.*

The Eleventh Circuit concluded by analyzing judicial decisions examining the remedial language in the Age Discrimination in Employment Act ("ADEA"), which is "similar to that found in the remedial portions of the FLSA."[11] *Id.* at 938. Relying on the Fifth Circuit's decision in *Dean v. American Security Ins. Co.*, 559 F.2d 1036 (5th Cir. 1977), the Eleventh Circuit found that the "legal relief" language is "exactly the same as that found in the FLSA." Thus, it concluded "that the FLSA should be interpreted similarly to preclude an award of punitive damages." *Id.*

A year after *Snapp*, Judge Pollak disagreed with the Eleventh Circuit's interpretation of §216(b) and found that punitive damages were available for retaliatory conduct under the FLSA. *Marrow*, 167 F. Supp. at 842-46. Judge Pollak inquired whether punitive damages "may be appropriate to effectuate the purposes of section 215(a)(3) . . . ." *Id.* at 843. Relying on the

---

[11]     The ADEA provides, in relevant part:

> Amounts owing to a person as a result of a violation of this chapter shall be deemed to be unpaid minimum wages or unpaid overtime compensation for purposes of sections 216 and 217 of this title: Provided, That liquidated damages shall be payable only in cases of willful violations of this chapter. In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including without limitation judgments compelling employment, reinstatement or promotion, or enforcing the liability for amounts deemed to be unpaid minimum wages or unpaid overtime compensation under this section."

29 U.S.C. § 626(b).

15

United States Supreme Court in *Mitchell v. Robert De Mario Jewelry, Inc.*, 361 U.S. 288 (1960), the court observed that "§ 215(a)(3) furthers the overall purposes of the FLSA by ensuring that employees feel secure in reporting violations of labor standards." *Id.* For employees to feel safe reporting violations, employers must be deterred from retaliating against such employees and "[d]eterrence, of course, is the special talent of punitive damages." *Id.* (citing *Cooper Indus., Inc. v. Leatherman Tool Grp., Inc.*, 532 U.S. 424 (2001)).

Judge Pollak of this Court found that the "application of the maxim of *eiusdem generis* to § 216(b) is inappropriate because that subsection prefaces its list of various forms of relief with the phrase 'without limitation.' " *Id.* at 844. In essence, the listing of some forms of relief was not to the exclusion of others. *Id.* Further, Judge Pollak held that this interpretation comports with the purpose of the FLSA stated by the Supreme Court in *Mitchell*—i.e. providing employees with protection substantial enough to discourage employers from engaging in retaliation." *Id.*

With regard to the concern that punitive damages will be awarded as a matter of course, Judge Pollak correctly noted that a jury "need not necessarily award punitive damages, nor impose such damages in a more than nominal amount." *Id.*; *see also Solis v. SCA Restaurant Corp.*, 938 F. Supp. 2d 380 (E.D.N.Y. 2013) (declining to award punitive damages as they are "discretionary and may be awarded 'to punish the defendant for his outrageous conduct and to deter him and others like him from similar conduct in the future' " (quoting *Smith v. Wade*, 461 U.S. 30, 54 (1983))).

Finally, Judge Pollak rejected the Eleventh Circuit's comparison of § 216(b) to the ADEA's pertinent damages provision. First, the court noted that the Fifth Circuit in *Dean* was heavily influenced "by several features of [the ADEA] that are absent from the FLSA." *Marrow*, 167 F. Supp. 2d at 845. For example, Section 626(b) of the ADEA included a criminal

16

enforcement provision that was removed prior to passage. The court in *Dean* found this evidence of Congress' preference for liquidated damages rather than punitive damages. *Id.* Judge Pollak observed that this reasoning cannot transfer to the FLSA because § 216(a) contains criminal provisions which the Eleventh Circuit relied on in finding punitive damages unavailable. *Id.* Further, Judge Pollak in *Marrow* found that "restricting the availability of punitive damages under the ADEA makes sense" because the ADEA allows liquidated damages only upon a showing of "willful violations" where the FLSA allows liquidated damages without such a showing. *Id.*

This Court finds Judge Pollak's well-reasoned opinion in *Marrow* persuasive and agrees that punitive damages are available for retaliation claims under the EPA and FLSA. The purpose of the FLSA is to ensure that employees "fe[el] free to approach officials with their grievances." *Mitchell*, 361 U.S. at 292. "This ends the prohibition of [215(a)(3)] against discharges and other discriminatory practices was designed to serve." *Id.* Thus, 215(a)(3) necessarily serves to deter employers from retaliating against their employees who voice "their grievances." *Id.* As Judge Pollak observed, "[d]eterrence, of course, is the special talent of punitive damages." 167 F. Supp. at 843. We deny Defendants' motion to strike Jones' claim for punitive damages under the FLSA.[12]

---

[12] Defendants rely on two cases in arguing that punitive damages are not available under the FLSA. *See Neibauer v. Philadelphia College of Pharmacy and Science*, 1992 WL 151321, at *7 (E.D. Pa. 1992) *and Martin v. Selker Bros., Inc.*, 949 F.2d 1286, 1299 (3d Cir. 1991). Neither of these cases support Defendants' position as neither discusses the availability of punitive damages pursuant to § 216(b).

### *ii.  Compensatory damages for pain and suffering*

Defendants recite the same arguments with regard to Jones' request for compensatory damages for emotional distress in connection with his FLSA and EPA claims as they did with regard to punitive damages.  We again find these arguments unavailing.

As Jones notes, our Court of Appeals has yet to decide whether emotional distress damages are recoverable in an FLSA retaliation action.  Jones cites cases from outside of this Circuit that suggest a willingness by some courts to allow emotional distress damages in FLSA retaliation cases.  *See Travis*, 921 F.2d at 111-12 ("Compensation for emotional distress, and punitive damages, are appropriate for intentional torts such as retaliatory discharge."); *Moore v. Freeman*, 355 F.3d 558, 563-64 (6th Cir. 2004) (noting that "consensus on the issue of compensatory damages for mental and emotional distress seems to be developing").  Moreover, at least two other courts of appeals have affirmed awards of emotional distress damages without directly addressing the issue.  *See Broadus v. O.K. Indus., Inc.*, 238 F.3d 990, 992 (8th Cir. 2001); *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999).

Guided by the Supreme Court's statement that the FLSA is "remedial and humanitarian in purpose" and it is not to be "interpreted or applied in a narrow, grudging manner", we find that at this stage in the proceeding, Jones may pursue compensatory damages for emotional distress.  *Tennessee Coal, Iron & R. Co. v. Muscoda Local No. 123*, 321 U.S. 590, 597, 64 S.Ct. 698, 88 L.Ed. 949 (1944).

18